UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------X

Senesco Marine, LLC, C.A. NO: 07-343 (ECT)

Plaintiff,

-against-

**AFFIDAVIT OF**
**GINO A. ZONGHETTI**

Hunt Marine I, LLC,

Defendant.

-----------------------------------------------------------X

State of New York )
ss.:
County of New York )

Gino A. Zonghetti, being duly sworn, deposes and says:

1. I represent defendant/counterclaim plaintiff Senesco Marine, LLC ("Senesco") in this matter, having been duly admitted *pro hac vice* by the Honorable Court. This Affidavit is submitted in support of Senesco's motion seeking an order striking the answer of defendant Hunt Marine I, LLC and dismissing its counterclaim, as well as for costs and fees and further relief the Court may deem just and proper pursuant to the inherent power of the Court as a result of the admission of Kevin Hunt, principal of Hunt Marine I, LLC ("Hunt Marine") at his deposition that he filed with the Court a false affidavit in opposition to Senesco's prior motion to strike Hunt Marine's answer and dismiss its counterclaim.

2. On April 16, 2008 Senesco moved for sanctions including an order striking Hunt Marine's answer, dismissing its counterclaim and awarding attorneys' fees as a result of Kevin Hunt's failure to appear for two scheduled depositions in this law suit, which involves Senesco's claims that Hunt Marine's tugs damaged its pier and Hunt Marine's counterclaim that Senesco's



Kenny, Stearns & Zonghetti
26 Broadway
New York, New York 10004

pier somehow damaged its tugs. Mr. Hunt failed to appear for depositions that were scheduled for April 10th and 14th, 2008 (Docket No. 15).

3. In opposition to said motion, Kevin Hunt submitted an affidavit dated May 2, 2008, which he signed "under the pains and penalties of purgery" (sic) (Exhibit A; Docket No. 20, attachment 2). In his affidavit, Mr. Hunt claimed that he missed the deposition that had been scheduled for April 10, 2008 because he was groggy due to having taken pain medication as a result of minor surgery on his finger that had been performed on an out-patient basis on April 9, 2008 (*Ibid*, ¶ ¶ 3 – 5). In his affidavit Mr. Hunt explained his failure to attend at his deposition that was rescheduled for April 14, 2008 as follows:

> "6. During the morning hours [of April 10th], I was contacted by Attorney Thomas Clinton and I advised him that the medication made me very groggy and light-headed and that I did not think I could attend the deposition.
>
> 7. Later that day, I conferred with Attorney Clinton and we agreed to resume the deposition on Monday, April 14, 2008.
>
> 8. On Sunday, April 13, I fell over the weekend and thought I had broken my leg. Because of my concern over the condition of my leg, I completely forgot about the deposition.
>
> * * *
>
> 10. The failure to appear at the deposition was a mistake on my part due to my concern over the condition of my leg and not due to any refusal to appear for a deposition (Exhibit A)."

4. After being served with Hunt Marine's opposition papers, Senesco filed and served a reply memorandum in which it specifically questioned the credibility of Kevin Hunt's excuse as set forth in his May 2, 2008 affidavit for not attending the April 14, 2008 deposition (Docket No. 22). Indeed, Senesco argued in part:

> "Indeed, Hunt's tale, if true, would mean undergoing anesthesia and taking narcotic pain medication [on April 9th] did not affect his ability to recall the deposition, while the vague problems with his leg did. Of course, Hunt provides



Kenny, Stearns & Zonghetti
26 Broadway
New York, New York 10004

> nothing in the way of documentation supporting any of his purported health problems that supposedly caused him to miss his second deposition and forget his third – not a doctor's note, a medical bill, or a prescription. The unsupported, alleged, belief he had broken his leg apparently not only erased his memory, but for some unexplained reason also supposedly caused Hunt to turn off his telephone – the next day." (*Ibid.*).

5. A hearing was scheduled on Senesco's motion for June 18, 2008. Prior to the hearing, Hunt Marine filed a sur-reply consisting, in part, of emergency room records from April 15, 2008 for Kevin Hunt who apparently sought treatment for bruises to his shins he claimed to have suffered on Saturday, April 12, 2008 (Docket No. 25). The sur-reply and the medical records were submitted in purported support of assertion made by Kevin Hunt in his May 2, 2008 affidavit that he somehow forgot his April 14th deposition because he allegedly injured his leg on April 12th.

6. The Court conditionally granted Senesco's motion to strike Hunt Marine's answer and dismiss the complaint in an order dated June 18, 2008 unless Kevin Hunt appeared for his deposition by a date certain (Docket No. 27).

7. Kevin Hunt appeared for his deposition on June 25, 2008. At the deposition Mr. Hunt was questioned concerning the reasons he failed to attend his deposition on April 14, 2008 and the affidavit he submitted in opposition to Senesco's motion for sanctions. Mr. Hunt testified as follows:

"Q. Okay. So this was such a big trauma that it affected your memory?
A. I got really hurt.
Q. Just focus on my question. The trauma affected your memory?
A. Yes.
Q. Okay. You were -- you were well aware that you did have the deposition for Monday, the 14th, right?
A. No, I wasn't.



Kenny, Stearns & Zonghetti
26 Broadway
New York, New York 10004
(212) 422-6111

Q. Okay. What does that mean? You weren't told about it?
A. *I thought the deposition was Tuesday morning*. Because when I was told of this, I had just had hand surgery, and I was on pain medication. I was whacked right out of it on pain medication. *And I thought my attorney told me Tuesday morning. You want me to lie? I'll lie. I'm telling you the truth.*
Q. No, actually, it's not what I want. And you may be confused about this. When you –
A. I'm telling the truth.
Q. Wait a second. This is important. When you put your right hand up and swore to tell the truth, you were taking an oath, which if you lie, you could be prosecuted for perjury. So it's not whatI want. It's what the laws requires.
A. Okay.
Q. You understand that, don't you? You understand that?
A. I'd appreciate you not pointing at me.
Q. I don't mean to point at you. I want you to be clear here.
A. Okay.
Q. When you use the phrase, "I'm telling the truth. I could lie," I want you to be very certain that if you lie –
A. When it comes to --
Q. -- there could be penalties under the law.
A. When it comes to my health, I'm not going to make stuff up.
Q. When it comes to your health, you're not going to make stuff up? Is that what you just said?
A. That's what I just said.
Q. *So the real problem here was you thought, because you were groggy, that the deposition was on Tuesday morning?*
A. *That's correct.* But then we had all the trauma over the weekend.
Q. So let's just go back a step. You had surgery on Thursday?
A. Wednesday.
Q. Wednesday; is that correct?
A. Wednesday afternoon.
Q. Wednesday afternoon. And the original plan -- that was Wednesday the 9th; is that correct?
A. Original plan was for Thursday morning here.
Q. Let's go back a step. April 9th, 2008, was a Wednesday; is that correct?
A. That's correct.
Q. You had known you were going in for a procedure on your finger prior to that date; is that correct?
A. Yes, sir.
Q. Despite that, and perhaps because you believed you would be well enough and clear minded enough to be deposed on Thursday, April 10th, you agreed to the deposition on that day; is that correct?
A. That's correct.
Q. What happened was at some point after that one-day surgery -- it was an in-and-out procedure?

A. Yeah.
Q. And was it under general anesthesia or local anesthesia? General meaning you're knocked out.
A. I know what it is. No, I was -- no, I was awake.
Q. Sometime after that, you were put on pain medication; is that correct?
A. Yeah, morphine first and then pain medication.
Q. And you realized that this may affect your ability to appear the next day for the deposition that had been scheduled, right?
A. That's correct.
Q. And you put a call into your attorney?
A. That's correct.
Q. And you sought to put off that deposition?
A. That's correct.
Q. At some point in time you received a call back from an attorney rescheduling the deposition; is that also correct?
A. That's correct.
Q. And was that from a Mr. Collins or from a Mr. Clinton?
A. Mr. Clinton.
Q. Okay. And when was that call?
A. I believe it was Thursday afternoon, Thursday noontime.
Q. So that would be Thursday, April 10th, sometime in the afternoon?
A. I believe so.
*Q. And your belief at that point in time was that the deposition had been scheduled for Tuesday, which would be April 15th?*
*A. That's correct.*
*Q. And you believed it was for the morning of Tuesday, April 15th?*
*A. That's correct.*
*Q. After that conversation scheduling the deposition, which you believed to be for Tuesday, April 15th, did you have any other conversation with attorneys, what have you, where you were given a different date?*
*A. No, sir.*
*Q. So from Thursday, April --*
*A. 10th.*
*Q. -- 10th, until sometime on Monday, April 14th, you believed the deposition was going to take place on Tuesday, the 15th; is that correct?*
*A. That's correct.*
*Q. And that is the reason you didn't appear on Monday, the 14th, right?*
*A. That's correct.*
*Q. On Monday, the 14th, at some point in time you received a phone call from Mr. Clinton, and you realized that you had the date wrong?*
*A. That's correct.*
Q. And when you got that phone call, where were you?
A. On my couch.
Q. At your home?
A. Yes.
Q. And you called this office and to see if you could come, right?

A. (Witness nodding head affirmatively).
Q. Is that correct?
A. That's correct.
Q. But it was too late; everyone had already gone, right?
A. Yes.
Q. Sometime after this deposition that had actually been scheduled for the 14th, but what you believed was scheduled for the 15th, when that date came and went, those two dates came and went, you realized that a motion was being filed concerning your nonappearance, right?
A. No, sir.
Q. What gave rise to this Affidavit, Exhibit 2?
A. I found out later in that week that there was a motion filed.
Q. That's all. And you realized that you had to submit something to explain why you didn't appear, right?
A. (Witness nodding head affirmatively).
Q. Yes?
A. Yes, sir.
Q. Nowhere in Exhibit 2[1] do you state the real problem, which was you believed it was scheduled for April 15th, right?
A. Well, you have to understand something. Between having my hand and being in all that pain, and all of a sudden falling, it wasn't a good three or four days for me.
Q. Okay. Understood.
A. Okay? It was a very -- I didn't know which way was up or down. All right? I'm in a lot of trauma, a lot of pain, a lot of -- really, you know, just -- it was a bad time. I had no reason or no business to miss this. As a matter of fact, I was looking forward to it.

* * *

Q. ... Getting back to my question, though, nowhere in this Exhibit 2, the Affidavit that you prepared and signed, May 2nd, 2008, do you mention the real reason that you didn't show up, that you testified to, which was that you had the date wrong?
A. Can I see that, please?
Q. Yeah, sure.
(Witness perusing the document).
Q. Is that correct?
A. What?
*Q. The question I asked. In this Affidavit that you prepared you didn't mention the real reason you missed the deposition, which was you had the date wrong. You believed it was the 15th instead of the 14th; is that correct?*
*A. That's correct.* (Exhibit B, pp. 76-84)(emphasis added).

---

[1] Exhibit 2 at Kevin Hunt's deposition was a copy of Kevin Hunt's May 2, 2008 affidavit.



Kenny, Stearns & Zonghetti
26 Broadway
New York, New York 10004
(212) 422-6111

8. Accordingly, at Mr. Hunt's deposition he testified that the reason he failed to appear for his deposition of Monday, April 14, 2008 was because he mistakenly believed it had been scheduled for Tuesday, April 15, 2008; Mr. Hunt made it clear that from the time said deposition was scheduled, on Thursday, April 10, 2008 he believed it was scheduled for Tuesday, April 15th and for that reason he never had any intention of appearing for a deposition on Monday, April 14th.

9. The statements of Kevin Hunt in his May 2, 2008 affidavit: "[b]ecause of my concern over the condition of my leg, I completely forgot about the deposition" and "[t]he failure to appear at the deposition was a mistake on my part due to my concern over the condition of my leg ..." were false, as established by Mr. Hunt's deposition testimony. That Mr. Hunt's deposition testimony clearly contradicting the reason for his missing the April 14th deposition was in fact the truth, as opposed to his affidavit, was made clear by Hunt's statements at the deposition: "You want me to lie? I'll lie. I'm telling you the truth" ( Exhibit B).

10. It is clear Mr. Hunt submitted a false affidavit in opposition to Senesco's motion in which he claimed a leg injury somehow made him forget the April 14th deposition believing by implicating an alleged health problem he could garner sympathy from the Court and avoid entry of an order striking Hunt Marine's answer and dismissing its counterclaim. As clear given Mr. Hunt's deposition testimony is that this excuse sworn to by Kevin Hunt in his affidavit, which was neither compelling nor particularly believable on its face, was unquestionably false and intended to deceive the Court as well as Senesco. Kevin Hunt, at least initially, appears to have succeeded in defrauding the Court as in reliance upon said affidavit the Court conditionally



Kenny, Stearns & Zonghetti
26 Broadway
New York, New York 10004

granted Senesco's motion. It is respectfully submitted that as a result of Mr. Hunt's fraud on the Court, entry of an order striking Hunt Marine's complaint and dismissing its counterclaim is required.

11. Additionally, Mr. Hunt should be required to pay Senesco's attorneys' fees associated with the taking of his deposition and the drafting of this motion. Senesco's counsel has billed nine hours traveling to and taking Mr. Hunt's deposition on June 25, 2008 at the rate of $275 per hour. Counsel expended four hours on legal research and drafting the instant motion, for total attorneys' fees in the amount of $3,575.00.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury the foregoing to be true and accurate.

Dated: July 9, 2008

Gino A. Zonghetti

Sworn to this 9th day
Of July, 2008

Notary Public

Monica A. Brescia
Notary Public, State of New York
No. 02BR6146685
Qualified in New York County
Commission Expires May 22, 2010

To: Robert Collins, Esq.
Clinton & Muzyka, P.C.
One Washington Mall, Suite 1400
Boston, MA 02108



Kenny, Stearns & Zonghetti
26 Broadway
New York, New York 10004

# Exhibit A

Case 1:07-cv-00343-T-DLM Document 20-3 Filed 05/06/2008 Page 1 of 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CIVIL ACTION
NO: 07-343T

SENESCO MARINE, LLC,
Plaintiff,

vs.

HUNT MARINE I, LLC,
Defendant,

**AFFIDAVIT OF KEVIN HUNT**

Now comes the Affiant, Kevin Hunt, after being duly sworn, as deposes and states as follows.

1. I am Kevin Hunt, the President of Hunt Marine I, LLC, P.O. Box 3354, Narragansett, Rhode Island.

2. I was advised by Attorney Robert Collins that my deposition in the above matter would be taken by the attorney for Senesco Marine, LLC on April 10, 2008.

3. I had conferred with Attorney Collins previously and advised him that I would be having surgery on my hand on April 9, 2008 on an outpatient basis, but believed that I would be able to attend the deposition.

4. After the surgery, I was prescribed Percocet for pain. This medication made be very groggy.

5. I called Attorney Collins the evening of April 9, 2008 and left a message for him that I was very groggy and did not believe that I could attend the deposition and testify

Case 1:07-cv-00343-T-DLM Document 20-3 Filed 05/06/2008 Page 2 of 3



truthfully.

6. During the morning hours, I was contacted by Attorney Thomas Clinton and I advised him that the medication made me very groggy and light-headed and that I did not think that I could attend the deposition.

7. Later that day, I conferred with Attorney Clinton and we agreed to resume the deposition on Monday, April 14, 2008.

8. On Sunday, April 13, I fell over the weekend and thought that I had broken my leg. Because of my concern over the condition of my leg, I completely forgot about the deposition.

9. During the morning of April 14, 2008, I was resting and had turned my cellular phone off. When I picked up the messages from Attorney Clinton, I attempted to contact him in an effort to get the attorneys to commence the deposition in the afternoon, but they had already left Finan & Grourke. When I did contact Attorney Clinton, he was already back in Boston.

10. The failure to appear at the deposition was a mistake on my part due to my concern over the condition of my leg and not due to any refusal to appear for a deposition.

11. I remain ready, willing and able to appear and present testimony on behalf of Hunt Marine I, LLC in the above matter.

Case 1:07-cv-00343-T-DLM Document 20-3 Filed 05/06/2008 Page 3 of 3

SIGNED UNDER THE PAINS AND PENALTIES OF PURGERY THIS 2nd DAY OF MAY, 2008

Kevin Hunt

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SENESCO MARINE, LLC,
Plaintiff,

VS. C.A. NO. 07-343T

HUNT MARINE I, LLC,
Defendant.

COPY

The deposition of **KEVIN HUNT**, taken pursuant to the Federal Rules of Civil Procedure on June 25, 2008, by the Plaintiff at the offices of Finan & Grourke, 24 Spring Street, Pawtucket, Rhode Island, commencing at 11:30 a.m., before Theresa A. Mullaugh, RMR, Notary Public.

APPEARANCES:

KENNY, STEARNS & ZONGHETTI, LLC
BY: GINO A. ZONGHETTI, ESQ.
Counsel for Plaintiff

CLINTON & MUZYKA, P.C.
BY: ROBERT E. COLLINS, ESQ.
Counsel for Defendant

ALSO PRESENT: Gayle Corrigan

A. It wasn't a boo-boo. It was a big smash.
Q. You went to the hospital a couple of days later, and there was nothing wrong with you. It was a boo-boo, as they say.
A. As a matter of fact, I'm still -- on August 7th, or July 7th I have an appointment with a -- what do you call them -- an orthopedics man because I don't feel the leg is healed yet.
Q. Okay. So this was such a big trauma that it affected your memory?
A. I got really hurt.
Q. Just focus on my question. The trauma affected your memory?
A. Yes.
Q. Okay. You were -- you were well aware that you did have the deposition for Monday, the 14th, right?
A. No, I wasn't.
Q. Okay. What does that mean? You weren't told about it?
A. I thought the deposition was Tuesday morning. Because when I was told of this, I had just had hand surgery, and I was on pain medication. I was whacked right out of it on pain medication. And I thought my attorney told me Tuesday morning.

You want me to lie? I'll lie. I'm telling you the truth.
Q. No, actually, it's not what I want. And you may be confused about this. When you --
A. I'm telling the truth.
Q. Wait a second. This is important. When you put your right hand up and swore to tell the truth, you were taking an oath, which if you lie, you could be prosecuted for perjury. So it's not what I want. It's what the laws requires.
A. Okay.
Q. You understand that, don't you? You understand that?
A. I'd appreciate you not pointing at me.
Q. I don't mean to point at you. I want you to be clear here.
A. Okay.
Q. When you use the phrase, "I'm telling the truth. I could lie," I want you to be very certain that if you lie --
A. When it comes to --
Q. -- there could be penalties under the law.
A. When it comes to my health, I'm not going to make stuff up.
Q. When it comes to your health, you're not going to

make stuff up? Is that what you just said?
A. That's what I just said.
Q. So the real problem here was you thought, because you were groggy, that the deposition was on Tuesday morning?
A. That's correct. But then we had all the trauma over the weekend.
Q. So let's just go back a step. You had surgery on Thursday?
A. Wednesday.
Q. Wednesday; is that correct?
A. Wednesday afternoon.
Q. Wednesday afternoon. And the original plan -- that was Wednesday the 9th; is that correct?
A. Original plan was for Thursday morning here.
Q. Let's go back a step. April 9th, 2008, was a Wednesday; is that correct?
A. That's correct.
Q. You had known you were going in for a procedure on your finger prior to that date; is that correct?
A. Yes, sir.
Q. Despite that, and perhaps because you believed you would be well enough and clear minded enough to be deposed on Thursday, April 10th, you agreed to the deposition on that day; is that correct?

A. That's correct.
Q. What happened was at some point after that one-day surgery -- it was an in-and-out procedure?
A. Yeah.
Q. And was it under general anesthesia or local anesthesia? General meaning you're knocked out.
A. I know what it is. No, I was -- no, I was awake.
Q. Sometime after that, you were put on pain medication; is that correct?
A. Yeah, morphine first and then pain medication.
Q. And you realized that this may affect your ability to appear the next day for the deposition that had been scheduled, right?
A. That's correct.
Q. And you put a call into your attorney?
A. That's correct.
Q. And you sought to put off that deposition?
A. That's correct.
Q. At some point in time you received a call back from an attorney rescheduling the deposition; is that also correct?
A. That's correct.
Q. And was that from a Mr. Collins or from a Mr. Clinton?
A. Mr. Clinton.

Q. Okay. And when was that call?
A. I believe it was Thursday afternoon, Thursday noontime.
Q. So that would be Thursday, April 10th, sometime in the afternoon?
A. I believe so.
Q. And your belief at that point in time was that the deposition had been scheduled for Tuesday, which would be April 15th?
A. That's correct.
Q. And you believed it was for the morning of Tuesday, April 15th?
A. That's correct.
Q. After that conversation scheduling the deposition, which you believed to be for Tuesday, April 15th, did you have any other conversation with attorneys, what have you, where you were given a different date?
A. No, sir.
Q. So from Thursday, April --
A. 10th.
Q. -- 10th, until sometime on Monday, April 14th, you believed the deposition was going to take place on Tuesday, the 15th; is that correct?
A. That's correct.

Q. And that is the reason you didn't appear on Monday, the 14th, right?

A. That's correct.

Q. On Monday, the 14th, at some point in time you received a phone call from Mr. Clinton, and you realized that you had the date wrong?

A. That's correct.

Q. And when you got that phone call, where were you?

A. On my couch.

Q. At your home?

A. Yes.

Q. And you called this office and to see if you could come, right?

A. (Witness nodding head affirmatively).

Q. Is that correct?

A. That's correct.

Q. But it was too late; everyone had already gone, right?

A. Yes.

Q. What then happened was you realized -- you were informed that Senesco, through me, was making a motion to dismiss the case?

A. I don't know. I hadn't spoke to anybody.

Q. At some point after the deposition date came and went, you believed it was the 15th --

A. Can we turn the air on in here?
Q. I can find out about it.
(Whereupon, a brief discussion was had off the record, and the following proceedings continued.)
BY MR. ZONGHETTI:
Q. Sometime after this deposition that had actually been scheduled for the 14th, but what you believed was scheduled for the 15th, when that date came and went, those two dates came and went, you realized that a motion was being filed concerning your nonappearance, right?
A. No, sir.
Q. What gave rise to this Affidavit, Exhibit 2?
A. I found out later in that week that there was a motion filed.
Q. That's all. And you realized that you had to submit something to explain why you didn't appear, right?
A. (Witness nodding head affirmatively).
Q. Yes?
A. Yes, sir.
Q. Nowhere in Exhibit 2 do you state the real problem, which was you believed it was scheduled for April 15th, right?

A. Well, you have to understand something. Between having my hand and being in all that pain, and all of a sudden falling, it wasn't a good three or four days for me.

Q. Okay. Understood.

A. Okay? It was a very -- I didn't know which way was up or down. All right? I'm in a lot of trauma, a lot of pain, a lot of -- really, you know, just -- it was a bad time. I had no reason or no business to miss this. As a matter of fact, I was looking forward to it.

Q. I have that effect on people. They look forward to meeting with me.

Getting back to my question, though.

A. They're lying to you, but that's beside the point.

Q. I'm not under oath.

Getting back to my question, though, nowhere in this Exhibit 2, the Affidavit that you prepared and signed, May 2nd, 2008, do you mention the real reason that you didn't show up, that you testified to, which was that you had the date wrong?

A. Can I see that, please?

Q. Yeah, sure.

(Witness perusing the document).

Q. Is that correct?

A. What?

Q. The question I asked. In this Affidavit that you prepared you didn't mention the real reason you missed the deposition, which was you had the date wrong. You believed it was the 15th instead of the 14th; is that correct?

A. That's correct.

MR. ZONGHETTI: Can I have that marked, please.

(Plaintiff's Exhibit 3 for I.D.: Senesco Invoice dated 4/4/2007 to Hunt Marine Towing & Transportation)

Q. I'm going to show you what's been marked as Plaintiff's Exhibit 3, which is an invoice from Hunt -- from Senesco to Hunt Marine Towing & Transportation. It's dated April 4th, 2007. Do you see that document, sir?

A. Yes, sir.

Q. And do you recognize that document?

A. Yes, sir.

Q. And do you recognize that document to be an invoice that was sent to you on behalf of Hunt Marine by Senesco for various services and wharfage for a period starting March 19th, 2007?